ESSEX COUNTY ORPHANS COURT.

In the matter of the estate of RAFFAELE JULA, deceased.

[Decided October 2d, 1925.]

Accounting—Administrators—Administrator Appointed in 1900—
Account Presented in 1902, Which Was Never Allowed—Ad-
ministrator Cited to Account in 1925—Account Filed, Show-
ing Balance Due Next of Kin—Accountant Told Different
Stories Regarding the Use He Had Made of the Money—
Held, He Must Pay Simple Interest on Amount in His Hands,
Also That No Commission Will be Allowed, Commissions
Being Allowed Only For Faithful Discharge of Duty.

On exceptions to account.

*Mr. J. Victor D'Aloia* (by *Mr. Carl Abbruzzese*), for the
exceptant.

*Mr. Maxwell M. Alback,* for the accountant.

KOCHER, ADVISORY MASTER.

Raffaele Jula, late of the city of Newark, died in the month
of November, 1900, and Antonio Fabiano was duly appointed
administrator of his estate, which amounted to the sum of
$1,077.50. On April 2d, 1902, the said administrator filed,
in the office of the surrogate of this county, an accounting
showing a balance of $908.42 for distribution among the next
of kin of the said intestate. This account, however, was
merely filed, and was never allowed by the orphans court.
It therefore is not an account at all in the true sense of that
term, but merely a statement showing the then condition of
the estate.

The administrator took no further proceedings in the mat-
ter until he was compelled, by order of this court, made on
January 30th, 1925, to settle his account as such administra-
tor. The account, however, was not actually filed until the

18th day of March, 1925. To this account exceptions were filed by Antonio Jula, one of the children and next of kin of the intestate, most of which object to items in the account wherein the administrator prays allowance for money which he claimed was paid by him to the widow and next of kin. Most of these exceptions were abandoned at the hearing.

Exceptant, however, pointed out that the two items of $37.50 each, one claimed to have been paid on December 14th and the other December 23d, 1900, were duplications, and an inspection of the vouchers filed shows that there are duplicate vouchers for a single payment. The administrator will therefore be surcharged with the sum of $37.50.

Another exception urged was the payment on, May 8th, 1902, to Antonio Jula, on account of Raffaele Jula, of the amount of $116.40. It was shown that this payment was to intestate's father, who was not one of the next of kin, and, therefore, was not entitled to participate in his estate. This exception will therefore be allowed.

It will be recalled that the administrator was appointed during the year 1900, and it was not until April 2d, 1902, that he filed his first account. Since that time he has made, as appears from his account, small payments to the next of kin of intestate during the years of 1900 to 1903, but that he made no payments since that time.

On the part of the exceptant, it is urged that inasmuch as this fund in the hands of the administrator was not invested, and the administrator, having failed to either invest the fund or to pay it to the next of kin, is chargeable with interest thereon. Asked what he did with the money, the administrator first said that he had it in his safe. Being then charged with having no safe, he said it was in his son's safe. When attention was called to the fact that at the time this money came into his hands his son was but a few years old, and, consequently, could have had no safe, he then said he kept it in a box in his room, later stating that he kept it in his trunk.

Counsel for accountant attempted to palliate this story by the fact that accountant was an Italian not sufficiently versed

in our customs to be chargeable with the duty to invest the funds. However that may be, the accountant himself testified that from 1910 to 1914 he had a bank account of his own, and it goes without saying that if he had sufficient knowledge to have a bank account of his own, he is chargeable with sufficient knowledge to have placed these funds in the bank. As a matter of fact, there was absolutely no excuse why this fund should not have been distributed at the expiration of one year from the appointment of the administrator. He was thoroughly familiar with the next of kin of the deceased, knew who was entitled to the fund, and the impression which the situation makes on the mind is that he made these several small payments from time to time for the purpose of keeping the parties entitled to the money quiet, and, they being in Italy, were more or less defenseless, and it was not until one of the sons of the intestate came to this country and personally intervened in the matter that the administrator made any attempt whatever to perform his duties as such administrator, and, even then, when ordered by this court, on January 30th last, to file his account within ten days, he did not obey the order of the court until the 18th day of March thereafter.

The accountant, in response to a question, admitted that he used a portion of this fund in the purchase of certain real estate which he purchased for his own use. In response to questions by his own counsel, he said that this statement made by him was not true, and that he had never touched the fund, but that it had been lying in the form of cash in his trunk.

This story taxes the credulity of any normal-minded man to ask one to believe that this accountant had several hundreds of dollars belonging to this estate in his trunk from 1902 to 1925, a period of twenty-three years, is a story too preposterous to admit of serious consideration.

It is well settled that the balance of assets remaining in the hands of an administrator after payment of debts should be paid to those interested, or put out at interest for their benefit. If the funds are used by the administrator, he is required not only to pay interest, but to account for all the

profits that he has made. If no profits have been made and the money has been suffered to lie idle, he will be charged with simple interest for his negligence, and he will not be exempted from the payment of interest simply on the ground that the legatees were at a distance and might call for their money when it was not in hand. *King* v. *Berry, 3 N. J. Eq. 261; Frey* v. *Frey, 17 N. J. Eq. 71.*

It is contended on the part of exceptant that accountant followed this course of conduct by advice of counsel, and he named an attorney of this state who has been dead for some years. While it seems incredible that any attorney should give such advice to accountant, still, such a defense is not applicable to him unless he acted in good faith, and inasmuch as I am fully satisfied that the defendant used a portion if not all of this money for his own personal use, it cannot be said that he acted in good faith. But be that as it may, the fact of retaining this money all these years without attempting to pay it to those to whom he knew it was due is certainly not good faith on his part. In his account, now under consideration, the accountant shows a balance in his hands of $475.22. The last payment made by accountant on account of the estate was on December 16th, 1903. He will therefore be held chargeable with simple interest on the sum of $475.22 from December 16th, 1903, at the rate of six per cent. per annum to the date of payment.

Accountant prays allowance under date of March 22d, 1902, for the sum of $73.08 as his commissions as administrator of the estate. It is well settled that an executor, administrator, guardian or trustee, is not entitled to commissions until they are settled and allowed by the orphans court, and that that cannot be deducted by him until they are so fixed and allowed. *Lathrop* v. *Smalley, 23 N. J. Eq. 192; Wyckoff* v. *O'Neil, 72 N. J. Eq. 880.* If accountant takes commissions before they are allowed by the court, he occupies the position of a borrower of the amount so taken, and is chargeable with interest thereon to the time of his accounting. *Wyckoff* v. *O'Neill, supra.* It is also well settled that commissions are a compensation for the faithful discharge

Essex County Orphans Court—In re Jula.

of duties, and that when an administrator violates that duty, he will not be entitled to commissions. *Dufford* v. *Smith, 46 N. J. Eq. 216, 222; In re Walsh's Estate, 80 N. J. Eq. 565, 575,* and cases cited.

The accountant has certainly not performed his plain and simple duty by paying the balance in his hands to the persons entitled to it, or, as an alternative, of investing the money. He has therefore forfeited his right to commissions, and the same will be disallowed, and, inasmuch as he has already paid himself commissions, he will be surcharged with interest upon the amount which he took from the estate at the rate of six per cent. per annum.